WEIR & PARTNERS LLP
*A Pennsylvania Limited Liability Partnership*
By:     Steven E. Angstreich, Esquire
            Nicole D. Gervato, Esquire
The Liberty View Building
457 Haddonfield Road, Suite 420
Cherry Hill, NJ 08002
856-740-1490
856-740-1491 (fax)
sangstreich@weirpartners.com
ngervato@weirpartners.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROSE HOTELS LTD., INC.<br>220 Doe Trail<br>Morganville, NJ 07751 | : <br> : <br> : <br> : | Civil Action No. |
| Plaintiff, | : <br> : | |
| v. | : <br> : | **COMPLAINT** |
| EXXON MOBIL CORPORATION<br>830 Bear Tavern Road<br>West Trenton, NJ 08628 | : <br> : <br> : <br> : | |
| Defendant. | : <br> : | |

Plaintiff Rose Hotels Ltd., Inc. ("Plaintiff") by and through its undersigned counsel, Weir & Partners LLP, files this Complaint against Defendant Exxon Mobil Corporation and in support thereof alleges as follows:

1.      Plaintiff is a corporation incorporated under the laws of the State of New Jersey with a business address of 220 Doe Trail, Morganville, New Jersey 07751.

2.      Exxon Mobil Corporation ("Defendant") is a corporation incorporated under the laws of the State of New Jersey with a business address of 830 Bear Tavern Road, West Trenton, New Jersey 08628.

## JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. §9613(b).

4.      This Court has supplemental jurisdiction over the state law claims contained herein pursuant to 28 U.S.C. §1367(a).

5.      Venue is proper in the Trenton vicinage pursuant to 28 U.S.C. §1391(b)(1) as Defendant's business address is located in West Trenton, New Jersey, within the said vicinage.

## FACTS

6.      In 2005, Plaintiff acquired the real property located at 874 US 1, North Avenel, New Jersey 07001 (the "Property") for the purpose of constructing a hotel thereon.  At the time of its acquisition, the Property had been the subject of an environmental clean-up, which pursuant to the issuance of a No Further Action ("NFA") letter, the New Jersey Department of Environmental Protection ("NJDEP") had been deemed the site fully remediated.

7.      In 2006, Plaintiff completed the construction of a 47,976 square-foot four-story hotel with asphalt paved parking areas, concrete flatwork and associated landscaping on the Property.

8.      Until Plaintiff sold the Property, it was operated as a Holiday Inn Express.

9.      Adjacent to the Property and to its south, is an Exxon gasoline station, Station #32516.  Defendant is the present owner of the gasoline station property located at 870 Route 1 and 9 North, Avenel, New Jersey (the "Exxon Site").

10.      In June 2003, Defendant removed four underground storage tanks ("UST") and associated product piping from the Exxon Site.  Attached hereto as Exhibit "A" is a true and

correct copy of Kleinfelder East, Inc.'s Remedial Investigation Report/Remedial Investigation Work Plan dated December 2009.

11.     When one of the USTs identified as T-2, a 6,000 gallon gasoline UST, was removed, pinholes were visually evident in its bottom.

12.     Defendant notified the NJDEP of the tank's condition and subsequently the NJDEP issued case #03-06-26-1557-22 to Exxon.

13.     Following the removal of the damaged UST, Defendant, through its environmental consultant had groundwater and soil samples collected and tested.

14.     In March 2005, monitoring well MW-1 was installed in the area of the former USTs on the Exxon Site.

15.     In November 2006, a meeting was held between the NJDEP and Defendant to discuss site conditions and requirements of the NJDEP for remediation and ultimate site closure.

16.     As a result of the meeting, NJDEP required that Defendant perform further investigation and testing of the groundwater.

17.     In February 2007, temporary points were installed on the Exxon Site which confirmed the presence of arsenic and total xylenes.

18.     The test results revealed the presence of arsenic, benzene and 1,2-Dichloroethane; all at concentrations above the NJDEP Groundwater Quality Standards ("GWQS").

19.     In June 2007, monitoring wells MW-1R, MW-3, MW-4 and MW-5 were installed on the Exxon Site.

20.     In June 2008, monitoring wells MW-6 and MW-7 were installed on the Exxon Site.

21.     In May 2009, monitoring wells MW-7D and MW-8 were installed on the Exxon Site, MW-9 was installed on Plaintiff's Property, and MW-10 was installed in Hudson Boulevard; all of these installations were done in connection with Exxon's fulfillment of NJDEP requirements.

22.     Between December 2009 and January 2010, monitoring wells MW-7DD and MW-11D were installed on the Exxon Site; MW-12 was installed on Plaintiff's Property; MW-14 was installed on the NJDOT property to the south/southwest of the Exxon Site; MW-15 and MW-15D were installed in Husdon Boulevard and MW-16 was installed in Jansen Avenue.

23.     In February 2010, the Areas of Concern ("AOC) on the Exxon Site were identified to include the former underground storage and dispensing equipment and the former underground heating oil and waste oil USTs.

24.     Between January 2010 and April 2013, Defendant conducted 15 sampling rounds at all of the monitoring wells.  Concentrations of trichloroethylene ("TCE"), tetrachloroethylene ("PCE"), cis-1,2-Dichloroethylene and vinyl chloride were consistently detected in monitoring wells MW-9 and MW-12 located on Plaintiff's Property.

25.     TCE, PCE, cis-1,2-Dichloroethylene and vinyl chloride are hazardous substances as determined by EPA and NJDEP.

26.     Monitoring well MW-9 is down gradient from the monitoring wells on the Exxon Site.  Despite that, over the 15 sampling rounds for monitoring wells MW-5 and MW-9, nine instances of groundwater flow to the south (toward Plaintiff's Property) were noted.  On June 19, 2014 shallow and deep soil samples were collected from ten locations on Plaintiff's Property.  Contaminants of TCE, PCE, cis-1,2-Dichloroethylene and vinyl chloride were not detected in any of the soil samples above their method detection limits.

4

27.   On June 20, 2014, three groundwater samples (TP-1, TP-2 and TP-3) were collected from temporary well points on Plaintiff's Property.  Contaminants including TCE, PCE, cis-1,2-Dichloroethylene and vinyl chloride were not detected in the samples collected from TP-1 located in the area of the previously remediated surface discharge of engine oil or T-3 located to the east of MW-9 and MW-12.

28.   Contaminants TCE, PCE and vinyl chloride were detected below their respective NJDEP GWQS detection limits, but cis-1,2-Dichloroethylene was detected above the NJDEP GWQS detection limits in TP-2.

29.   The highest concentrations of chlorinated compounds have been detected during the sampling of monitoring well MW-5 located on the Exxon Site.

30.   Monitoring well MW-5 represents the source area for the observed contamination.

31.   Monitoring well MW-9 is located approximately 50 feet north of the source area well and monitoring well MW-12 is located approximately 115 feet north of the source area well.

32.   The decreasing trend in contamination levels between the source area well MW-9 and MW-12 is indicative of contamination dispersal and dilution as a result of groundwater flow and establishes that the contamination discovered on Plaintiff's Property came from the Exxon Site.

33.   Data collected from the temporary groundwater sampling points supports the conclusion that the source of the chlorinated compounds detected in groundwater is offsite and up-gradient of monitoring wells MW-9 and MW-12.

34.   The location of the former Exxon Site and MW-5 is immediately up-gradient of MW-9.  MW-5 is a known area of contamination on the Exxon Site, which makes the Exxon Site

the most likely source of the observed groundwater contamination in MW-9 and MW-12 on Plaintiff's Property.

35.     On February 16, 2014, Plaintiff executed a "Purchase and Sale Agreement" ("Purchase Agreement") with 874 US1 Partners LLC ("874 US1 Partners" or "Purchaser") by which Plaintiff agreed to sell the Property to 874 US1 Partners for $8,200,000.

36.     The Purchaser had a Phase I study performed at the Property as part of its due diligence.  The Phase I revealed the presence of hazardous substances on the Property and the Purchaser's environmental consultant recommended that a Phase II be conducted.

37.     The hazardous substances discovered during the due diligence were not the same hazardous substances that had existed on site prior to Plaintiff's acquisition which contamination had been remediated and for which the NJDEP had issued an NFA letter.

38.     Because of the presence of the contamination, on May 5, 2014, the Purchaser notified Plaintiff of its intention to terminate the purchase.

39.     Upon receipt of that notification, in an effort to save the transaction, Plaintiff contacted Defendant's remediation contractor and requested that Defendant:  (a) acknowledge that the Exxon Site was the source of the contamination; (b) agree to perform the clean-up on Plaintiff's Property; and (c) indemnify Plaintiff and its purchaser from any remediation expense. Defendant denied that the contamination emanated from its property and refused Plaintiff's request.

40.     As a result of Defendant's refusal to perform the clean-up and indemnify Plaintiff and its Purchaser, Plaintiff lost the Purchaser and was unable to complete the sale for $8,200,000.

41.     Shortly thereafter and because Plaintiff needed to complete a 1031 tax deferred exchange, Plaintiff was able to locate another buyer ("Buyer") for the Property but that Buyer would not agree to pay $8,200,000 for the Property.  After extensive negotiations, Plaintiff and the Buyer reached an agreement for the sale of the Property at $7,000,000.

42.     However, as a condition by the Buyer for its purchase, Plaintiff agreed to pay up to $300,000 in remediation costs for the Property.

## COUNT I
### COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT
### 42 U.S.C.A. §9607(a)

43.     Plaintiff incorporates by reference paragraphs 1 through 42 as though fully set forth at length herein.

44.     Defendant is a covered person under 42 U.S.C.A. §9607(a) as it is or was the owner and/or operator of a facility.

45.     The Exxon Site is a facility as defined in 42 U.S.C.A. §9601(9)(B) as it is a site where hazardous substances – TCE, PCE, cis-1,2-Dichloroethylene and vinyl chloride – have been deposited, store, disposed of or placed, or otherwise come to be located.

46.     As a result of the discharge of hazardous substances by Defendant, the Property's groundwater has been contaminated with TCE, PCE, cis-1,2-Dichloroethylene and vinyl chloride.

47.     Plaintiff is now required to assess the contamination on site and to perform remediation steps consistent with the National Contingency Plan.

48.     As an owner and/or operator of a facility from which the contamination has emanated, Defendant is liable to Plaintiff for necessary costs of response incurred to remediate the on-site contamination consistent with the National Contingency Plan and damages for injury

to, destruction of or loss of natural resources, including the reasonable costs of assessing such injury, destruction or loss resulting from such a release, for which Plaintiff is obligated to pay to $300,000 for such remediation.

WHEREFORE, Plaintiff demands judgment in its favor against Defendant for damages in an amount in excess of $75,000 together with interest and costs of suit and for such other relief as this Court may deem just and equitable.

## COUNT II
## SPILL COMPENSATION AND CONTROL ACT
## N.J.S.A. 58:10-23.11g(c)(1)

49.     Plaintiff incorporates by reference paragraphs 1 through 48 as though fully set forth at length herein.

50.     Any person who discharges a hazardous substance, or is in any way responsible for any hazardous substance, is strictly liable, without regard to fault, for all cleanup and removal costs no matter by whom incurred. N.J.S.A. 58:10-23.11g(c)(1).

51.     The Property's groundwater has been contaminated with TCE, PCE, cis-1,2-Dichloroethylene and vinyl chloride.

52.     Defendant is responsible for the presence of the hazardous substances on the Property.

53.     Defendant is strictly liable for the remediation costs incurred or to be incurred by Plaintiff, which may be up to $300,000.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for damages in an amount in excess of $75,000 together with interest and costs of suit and for such other relief as this Court may deem just and equitable.

## COUNT III
## PRIVATE NUISANCE

54.     Plaintiff incorporates by reference paragraphs 1 through 53 as though fully set forth at length herein.

55.     Defendant is the owner of the Exxon Site.

56.     Defendant permitted hazardous substances to be released into the groundwater on the Exxon Site.

57.     The hazardous substances released into the groundwater on the Exxon Site have traveled onto and into the Property.

58.     The presence of the hazardous substances on the Property has contaminated the Property thereby interfering with Plaintiff's ability to sell the Property.

59.     Defendant interfered with Plaintiff's use and enjoyment of the Property by permitting hazardous substances to be released onto and into the Property.

60.     As a direct and proximate result of Defendant's release of hazardous substances onto and into the Property, Plaintiff has suffered damage and loss in excess of $1,200,000.

61.     In addition thereto and as a proximate cause of Defendant's release of hazardous substances, Plaintiff is obligated to expend up to $300,000 in remediation costs as required by the Purchase and Sale Agreement as set forth above.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for damages in an amount in excess of $75,000 together with interest and costs of suit and for such other relief as this Court may deem just and equitable.

## COUNT IV
## NEGLIGENCE

62.     Plaintiff incorporates by reference paragraphs 1 through 61 as though fully set forth at length herein.

63.     Defendant owed a duty to Plaintiff, as the owner of the Property adjacent to the Exxon Site, to prevent the release of hazardous substances.

64.     Defendant was negligent and breached its duty to Plaintiff as an adjacent property owner to prevent the release of hazardous substances into the ground and groundwater and then onto and into Plaintiff's Property.

65.     As a proximate cause of Defendant's negligence, the Property is now contaminated with hazardous substances from the Exxon Site.

66.     As a direct and proximate result of Defendant's release of hazardous substances onto and into the Property, Plaintiff has suffered damage and loss in excess of $1,200,000.

67.     In addition thereto and as a proximate cause of Defendant's release of hazardous substances, Plaintiff is obligated to expend up to $300,000 in remediation costs as required by the Purchase and Sale Agreement as set forth above.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for damages in an amount in excess of $75,000 together with interest and costs of suit and for such other relief as this Court may deem just and equitable.

## COUNT V
## TRESPASS

68.     Plaintiff incorporates by reference paragraphs 1 through 67 as though fully set forth at length herein.

69.     Defendant released hazardous substances onto the Property, thereby contaminating it.  Plaintiff did not consent to the presence of contamination on the Property; which is an unlawful entry onto the Property.

70.     By releasing hazardous substances onto the Property, Defendant has trespassed on the Property.

71.     As a direct and proximate result of Defendant's trespass, Plaintiff has suffered damage and loss in excess of $1,200,000.

72.     In addition thereto and as a proximate cause of Defendant's trespass, Plaintiff is obligated to expend up to $300,000 in remediation costs as required by the Purchase and Sale Agreement as set forth above.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for damages in an amount in excess of $75,000 together with interest and costs of suit and for such other relief as this Court may deem just and equitable.

WEIR & PARTNERS LLP
*A Pennsylvania Limited Liability Partnership*

By:

Steven E. Angstreich, Esquire
Nicole D. Gervato, Esquire
Attorneys for Plaintiff

Dated: August 14, 2014